UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL HUNNICUTT,<br><br>  Plaintiff,<br><br>  vs.<br><br>MATTHEW CATE, Secretary, et al.,<br><br>  Defendants. | Case No: C 12-0380 JST (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 40 |

Plaintiff Daniel Hunnicutt, a former inmate at the Correctional Training Facility ("CTF"), in Soledad, California,[1] filed this pro se civil rights action pursuant to 42 U.S.C. section 1983 alleging constitutional violations. Thereafter, by order filed on June 11, 2012, the Court found that the allegations in Plaintiff's First Amended Complaint ("FAC") stated a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs against Nurses Linda Pruitt, Elizabeth Leary, L. Banta, and Dr. Vu Nguyen. The Court dismissed Plaintiff's claims against all other defendants.

Now pending before the Court is the summary judgment motion filed by Nurses Pruitt, Leary and Banta.[2] ECF No. 40. For the reasons discussed below, the Court GRANTS the motion.

---

[1] On March 29, 2013, Plaintiff informed the Court that he is no longer in custody. See ECF No. 53.

[2] Although Dr. Nguyen was served, he has not appeared in this action and is not represented by the attorneys representing Nurses Pruitt, Leary and Banta.

I. BACKGROUND

The following facts are taken from the allegations in Plaintiff's verified FAC and from Plaintiff's medical records, which both Defendants and Plaintiff submitted.

On March 10, 2008, Plaintiff submitted a CDC 736 Health Care Services Request ("HCSR") Form in which he indicated that he had blood in his urine and blood on his underwear. ECF No. 45-1, Plaintiff's Reply, Ex. A (HCSR Form) at 9.[3]  Plaintiff states that, when Nurse Pruitt met with him pursuant to his HCSR, she told him that the blood was "nothing serious."  FAC at 3. Plaintiff also informed Nurse Pruitt that he had sharp pains in his rectum and she told him, "Go to the toilet."  Id.  On the HCSR Form, Nurse Pruitt, who was the triage nurse, wrote that Plaintiff stated, "I feel fine now, just had some blood on last Tuesday."  ECF No. 45-1, Plaintiff's Ex. A at 9.  On the HCSR Form, Nurse Pruitt reported that she took a urine sample and performed a dipstick test and that the test results were negative.  Nurse Pruitt also noted on the Form that Plaintiff did not complain of pain, that she told him to continue with good intake of water and that he verbalized understanding.  Id.

On October 14, 2009, Plaintiff was unable to urinate.  FAC at 3.  Plaintiff filled out a CDC 736 HCSR Form requesting medical care for this problem.  ECF No. 45-1, Plaintiff's Ex. A at 10 (HCSR Form).  On the same day, he was seen by Nurse Leary, the triage nurse, who referred him to Dr. Friederichs.  Id.  Later that same day, Dr. Friederichs examined Plaintiff and diagnosed him with acute urinary retention, likely prostatic enlargement and anti-cholinergic effects from psychological medication.  ECF No. 40-2, Defendants' Ex. A at 2 (Dr. Friederichs' Notes). Dr. Friederichs ordered a Foley catheter to help Plaintiff void his bladder, a urinalysis, and blood tests.  Id. at 2-3.  The tests were done that day; they showed that Plaintiff's PSA tumor markers were high and all other results were normal.  ECF No. 45-2, Plaintiff's Ex. E at 22-23 (Oct 14, 2013 Lab Report).

In late October and November 2009, Plaintiff frequently saw Dr. Friederichs for check-ups on the Foley catheter.  ECF No. 45, Plaintiff's Ex. E at 41-42, 45, 47 (Dr. Friederichs' Notes). Dr. Friederichs referred Plaintiff to a urologist for a consultation.  In November 2009, Plaintiff saw

---

[3] For consistency, the Court uses the pagination of the Court's electronic case filing system (ECF).

urologist Dr. Milanesa, who treated Plaintiff's urine flow difficulty and prostate enlargement with Flomax, Hytrin, Proscar, and Ditropan. ECF No. 45-2, Plaintiff's Ex. E at 5, 48 (Dr. Milanesa Notes). On November 19, 2009, Dr. Milanesa ordered a cystoscopy for gross hematura, a transrectal ultrasound (TRUS) prostate biopsy, and an ultrasound of the renal system and bladder. ECF No. 45, Plaintiff's Ex. E at 44 (Dr. Milanesa's Notes).

On December 1, 2009, Plaintiff's Foley catheter was removed with instructions to reinsert it if he could not urinate. ECF No. 45-2, Plaintiff's Ex. E at 45 (Dr. Notes). On December 11, 2009, Plaintiff's Foley catheter was re-inserted after he complained that he was unable to urinate for three hours. ECF No. 40-2, Defendants' Ex. A, at 4 (Dr. Notes). On December 13, 2009, Plaintiff submitted a HCSR Form indicating that the catheter was causing him pain. ECF No. 40-2, Defendants' Ex. A at 5 (HCSR Form). That same day, Plaintiff was seen by Nurse Leary who referred Plaintiff to sick call. Id. The next day, December 14, 2009, Dr. Friederichs saw Plaintiff and ordered the removal of the Foley catheter and a urinalysis. ECF No. 40-2, Defendants' Ex. A at 6 (Dr. Friederichs' notes). On December 14, 2009, Plaintiff underwent a renal ultrasound examination, showing everything to be normal except for two small cysts in the left kidney, which had not changed since September 21, 2009. ECF No. 40-2, Defendants' Ex. 40-2 at 7 (Renal Ultrasound Report).

On December 19, 2009, Plaintiff filled out a HCSR Form complaining of black and bloody stool, night sweats, blood in his urine, feeling ill, feeling nauseated, and abnormal labs. ECF No. 45-1, Plaintiff's Ex. A at 9 (HCSR Form). Nurse Leary, as triage nurse, referred Plaintiff to Dr. Nguyen.[4] Id.

On December 21, 2009, Plaintiff submitted a tuberculosis survey, which was an annual review for any signs or symptoms of tuberculosis. On the survey, Plaintiff checked boxes indicating that he had weight loss, night sweats, and fever. ECF No. 45-1, Plaintiff's Ex. A at 13 (Tuberculosis Form). He also checked the box indicating that he had finished taking INH, a

---

[4] The medical reports submitted by the parties do not indicate that Plaintiff was treated by Dr. Nguyen.

- 3 -

treatment for tuberculosis, and that his chest X-ray in October or November 2009 showed no signs of tuberculosis.  Id.

On December 28, 2009, Plaintiff was seen by Dr. Friederichs for a urinary tract infection, black stools, upset stomach, and night sweats.  ECF No. 45-1, Plaintiff's Ex A at 19 (Dr. Friederichs' Notes).  Dr. Friederichs reported that Plaintiff's prostate was enlarged but smooth, and hemoccult was negative.  Id.  Dr. Friederichs prescribed medication to treat Plaintiff's infection and to alleviate his stomach pain.  Id.  Dr. Friederichs also ordered blood tests to determine the cause of Plaintiff's night sweats.  Id.

On January 15, 2010, Plaintiff was transported by ambulance to a hospital for chest pains and shortness of breath.  ECF No. 40-1, Defendants' Ex. A at 9 (Emergency Care Flow Sheet).  Plaintiff had four stents placed in his heart.  ECF No. 40-2, Defendants' Ex. A at 10 (Dr. Friederichs' Notes).  Because of Plaintiff's heart condition, his cystoscopy and prostate biopsy were postponed.  Id.; ECF No. 45-2, Plaintiff's Ex. A at 11 (Dr. Milanesa's Notes).  The prostate biopsy, completed on March 3, 2010, showed patchy chronic inflammation and fibrosis.  ECF No. 40-2 Defendants' Ex. A at 12-13 (Surgical Pathology Report).

On March 18, 2010, Plaintiff saw urologist Dr. Milanesa who ordered medications for Plaintiff's enlarged prostate with a follow-up appointment scheduled for one to two months with a consideration of a microwave treatment (TUMT) for the prostate.  ECF No. 40-2, Defendants' Ex. A at14 (Dr. Milanesa's Notes).

On May 6, 2010, Plaintiff underwent an Uroflow and post-void residual urine test.  ECF No. 45-2, Plaintiff's Ex. E at 7 (Health Care Services Physician Request for Services).  On August 5, 2010, a TUMT was performed by Dr. Milanesa.  ECF No. 45-2, Plaintiff's Ex. E at 5 (Health Care Services Physician Request for Services).  After the treatment, Plaintiff reported better urine flow and less urine retention.  ECF No. 40-2, Defendants' Ex. A at 18-20 (Dr. Friederichs' Medical Progress Notes).

Plaintiff did not complain of urinary flow problems again until February 2, 2012, when he reported that his flow was down and that without Proscar, he was having problems urinating.  ECF No. 40-2, Defendants' Ex. A at 24 (Dr. Friederichs' Medical Progress Note).  On February 23,

2012, Plaintiff's medication was changed. ECF No. 40-2, Defendants' Ex. A at 27 (Dr. Milanesa's note). On July 9, 2012, Plaintiff reported to Dr. Friederichs that his prostate symptoms were controlled with the combination of Flomax and Ditropan. ECF No. 40, Defendants' Ex. A at 28-29 (Dr. Friederichs' Medical Progress Note).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson, 477 U.S. at 248 (holding fact to be material if it might affect outcome of suit under governing law). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed

material fact. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may consider only admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### B. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need. Id. at 1059. A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. McGuckin, 974 F.2d at 1060. Deliberate indifference may be shown when prison officials deny,

delay or intentionally interfere with medical treatment, or it may be shown in the way in which they provide medical care. Id. at 1062.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. Id. at 1059; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment amount to deliberate indifference. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. Id. at 1058.

## III. DISCUSSION

Defendants do not dispute that Plaintiff's enlarged prostate and urinary problems constitute a serious medical condition. Instead, they move for summary judgment on the ground that Plaintiff fails to show that they acted with deliberate indifference to his medical condition.

### A. Nurse Pruitt

Plaintiff argues that Nurse Pruitt was deliberately indifferent to his medical needs on March 10, 2008 because, instead of taking seriously his complaints of blood in his urine and shorts and pain in his rectum, she dismissed them. ECF No. 13, FAC at 3.

One fact regarding this claim is disputed. Nurse Pruitt indicates that when she met with Plaintiff, he told her he was fine. Although Plaintiff does not specifically dispute that he said this, taking the evidence in the light most favorable to Plaintiff, the Court assumes that he did not indicate he was feeling fine. Even so, Plaintiff fails to raise a disputed issue of material fact that Nurse Pruitt's actions were deliberately indifferent to his serious medical needs.

First, on March 10, 2008, the only occasion that Plaintiff alleges he saw Nurse Pruitt, his enlarged prostate had not yet been diagnosed. Therefore, when Nurse Pruitt met with Plaintiff on this date, she could not have been aware that he had a serious medical need. Thus, Plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case. For this reason alone, Nurse Pruitt is entitled to judgment on this claim.

Second, it is undisputed that Nurse Pruitt checked for blood in Plaintiff's urine by taking a urine sample and completing a dipstick test, and that these tests came back negative. Thus, contrary to Plaintiff's argument that Nurse Pruitt ignored or dismissed his complaints, her actions, performing tests to ascertain if there was blood in Plaintiff's urine, shows that she took his complaints seriously. Nurse Pruitt is entitled to judgment for this additional reason.

In his opposition, Plaintiff argues that Nurse Pruitt should have referred him to a doctor, because "a nurse is not a doctor." Opp. at 5. A nurse's failure to refer an inmate to a doctor is evidence of indifference to a serious medical need only when the inmate's symptoms or other objective evidence indicate that a doctor's care is required. See John v. Berry, 469 F. Supp. 2d 922, 939 (W.D. Wash. 2006) (police officers' did not deliberately inflict pain on plaintiff with fractured knee where fire department personnel did not believe knee was badly hurt). Because the tests Nurse Pruitt performed showed that Plaintiff did not have blood in his urine, it was reasonable for her to decide that a referral to a doctor was unnecessary. No evidence shows that Nurse Pruitt knew that Plaintiff faced a risk of serious harm or that she disregarded any risk of harm. Therefore, summary judgment on this claim is granted in favor of Nurse Pruitt.

### B. Nurse Leary

Plaintiff interacted with Nurse Leary on three occasions. Plaintiff argues that, on October 14, 2009, Nurse Leary should have treated his pain and inability to urinate instead of referring him to a doctor.

Although Nurse Leary did not treat Plaintiff herself on October 14, 2009, she referred him to Dr. Friederichs, who saw Plaintiff that same day. Dr. Friederichs prescribed a Foley catheter and lab tests to determine the cause of Plaintiff's urinary problems. Plaintiff's HCSR Form indicates that Nurse Leary was acting as a triage nurse, a person who determines the priority of patients' treatments based on the severity of their condition.

As a triage nurse, Nurse Leary performed her job by assessing Plaintiff, determining that his condition was severe, and referring him to see a doctor that same day – which he did. Dr. Fredericks ordered tests to determine the cause of Plaintiff's symptoms. Except for arguing that Nurse Leary should have treated him instead of Dr. Friederichs, Plaintiff does not indicate

what Nurse Leary could have provided that he did not receive from Dr. Friederichs.  In any event, by referring Plaintiff to Dr. Friederichs, Nurse Leary did not disregard Plaintiff's medical needs; rather, she took his medical needs seriously by ensuring that he immediately saw a physician who ordered the proper treatment.

Plaintiff next interacted with Nurse Leary on December 13, 2009, when he submitted a HCSR Form indicating that his catheter was causing him pain.  Plaintiff argues that Nurse Leary disregarded his complaints about his catheter and the pain he was experiencing.  The evidence shows that, after hearing Plaintiff's complaints, Nurse Leary referred him to sick call and, the next day, Plaintiff was seen by Dr. Friederichs who provided treatment.  Again, Nurse Leary appropriately responded to Plaintiff's medical needs as a triage nurse by ensuring that he saw a physician the next day.

Plaintiff interacted with Nurse Leary a third time on December 19, 2009, when he filled out a HCSR Form reporting blood in his stool and urine, night sweats, and a general feeling of being ill.  Again, Nurse Leary referred Plaintiff to a physician, Dr. Nguyen.  No medical record indicates that Dr. Nguyen saw or treated Plaintiff.  However, on December 27, 2009, Plaintiff was seen by Dr. Friederichs, who addressed Plaintiff's symptoms by prescribing medication to treat the blood in his urine and his stomach problems and by ordering labs to determine the cause of Plaintiff's night sweats.

Plaintiff argues that Nurse Leary was deliberately indifferent because she did nothing to help him when he was in pain.  However, Nurse Leary performed her triage job by referring Plaintiff to a physician, Dr. Nguyen.  Although no evidence indicates that Dr. Nguyen saw Plaintiff, Dr. Friederichs saw and treated Plaintiff eight days later.  Nurse Leary cannot be faulted if Dr. Nguyen was not available to treat Plaintiff.  The evidence shows that Nurse Leary understood Plaintiff's medical needs and addressed them by making a referral to a physician.  At the most, her failure to ensure that Plaintiff saw a doctor sooner amounts to negligence,[5] which is insufficient to establish deliberate indifference.  See McGuckin, 974 F.2d at 1059.

---

[5] The Court wishes to be clear that this legal discussion does not imply that the Court finds that Nurse Leary was negligent.  It does not so find.

1  Looking at the evidence in the light most favorable to Plaintiff, he has failed to raise a
2 disputed issue of material fact showing that Nurse Leary was deliberately indifferent to his serious
3 medical needs by referring him to a physician instead of treating him herself. Summary judgment
4 on this claim is granted in favor of Nurse Leary.

        **C.**     **Nurse Banta**

Plaintiff argues that Nurse Banta was deliberately indifferent to his medical needs because she did not follow up or provide any medical care to him after he reported weight loss, night sweats, and fever on a December 21, 2009 tuberculosis questionnaire. On the tuberculosis questionnaire, Plaintiff indicated that he had completed his treatment for tuberculosis and that a chest x-ray taken two months prior showed no signs of tuberculosis. Because the questionnaire was a follow-up regarding tuberculosis treatment and because Plaintiff indicated that he had received treatment and that recent x-rays showed that he was tuberculosis-free, it was reasonable for Nurse Banta not to respond to the symptoms Plaintiff listed on the questionnaire. Furthermore, Plaintiff was seen six days later by Dr. Friederichs who ordered laboratory tests to determine the cause of Plaintiff's night sweats. Again, Plaintiff's complaints were not ignored, but timely treated. The fact that Nurse Banta did not respond to symptoms Plaintiff indicated in the tuberculosis questionnaire when, at the same time, he indicated that he had received the proper treatment for tuberculosis and recent x-rays indicated he did not have tuberculosis, does not show that Nurse Banta was deliberately indifferent to Plaintiff's medical needs. Even if Nurse Banta should have done more on the information available to her – which Plaintiff has not established – her actions would then constitute only negligence, which is insufficient to establish deliberate indifference to a serious medical need. See McGuckin, 974 F.2d at 1059.

Thus, the evidence shows that Defendants timely and appropriately responded to Plaintiff's medical needs and symptoms. Contrary to Plaintiff's arguments that his complaints were ignored or unreasonably delayed, he was seen by the prison medical staff as well as an outside specialist in urology to diagnose and treat his medical condition; he was prescribed medication and medical procedures to treat his enlarged prostate and resulting urinary problems. Defendants' treatment eventually led to the diagnosis and proper treatment of Plaintiff's symptoms.

Plaintiff argues that Defendants overlook the events from March 10, 2008 to October 14, 2009, the date he was diagnosed with an enlarged prostate, implying that his treatment was deficient before he was diagnosed. Plaintiff implies that Defendants did nothing in response to his complaints, when in fact Nurse Pruitt performed two medical tests, both of which were negative. Plaintiff submits no evidence that Defendants impeded his diagnosis, or could have done something that would have led to an earlier diagnosis.

Thus, even when construing the undisputed facts in a light most favorable to Plaintiff, the evidence shows that Defendants treated Plaintiff's symptoms and serious needs in a timely and appropriate manner. Accordingly, Defendants are entitled to judgment as a matter of law on the claim that they were deliberately indifferent to Plaintiff's serious medical needs. See Celotex, 477 U.S. at 323.

Summary judgment is also granted in favor of non-appearing Defendant Dr. Nguyen. Plaintiff has failed to submit any evidence showing that Dr. Nguyen treated him improperly or delayed or denied treatment. See Columbia Steel Fabricators v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir. 1995) (summary judgment may be granted by a court sua sponte in favor of a nonappearing party on the basis of facts presented by other defendants who have appeared, where plaintiff had a full and fair opportunity to brief and present evidence on the claim against the nonappearing defendant); see also Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated).

## QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity from Plaintiff's deliberate indifference claim. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The issue of qualified immunity generally entails a two-step process, which requires the court to first determine whether the defendant violated a constitutional right, and then to determine whether that right was

clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court modified the Saucier test and "gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated." James v. Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing Saucier after Pearson).

Under the second prong of the Saucier two-step process, the court determines "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Id. at 205-06; Brosseau, 543 U.S. at 198.

As to the first prong, for the reasons discussed above, Plaintiff has not shown that Defendants violated a constitutional right. As to the second prong, even if Plaintiff had shown that Defendants violated a constitutional right, the undisputed evidence shows that reasonable medical personnel in Defendants' positions could have believed that their conduct was lawful under the circumstances.

The evidence shows that, on March 10, 2008, based on Plaintiff's description of his symptoms, Nurse Pruitt gave him two tests to determine if he had blood in his urine. When the test results were negative, she advised Plaintiff to drink water for hydration. Nurse Pruitt's actions were calculated to diagnose Plaintiff's symptoms and were reasonable under the circumstances. The evidence shows that Plaintiff submitted three HCSR Forms that were reviewed by Nurse Leary, the triage nurse, and that, based upon the symptoms indicated by Plaintiff, Nurse Leary referred him to a physician. Under the circumstances, Nurse Leary's actions were reasonable. The evidence shows that Plaintiff indicated, on a tuberculosis survey form reviewed by Nurse Banta, that he was experiencing certain symptoms, but he also indicated on the form that he had been treated for tuberculosis and that recent x-rays showed that he did not have tuberculosis. Although Nurse Banta did not immediately respond to Plaintiff's symptoms, he was seen six days later by

Dr. Friedrichs who treated Plaintiff for his symptoms. Nurse Banta's response was reasonable under these circumstances.

Therefore, based on the evidence available to Defendants, their actions were reasonable and appropriately tailored to Plaintiff's condition and symptoms. Defendants' actions eventually resulted in a diagnosis of an enlarged prostate and a successful treatment plan that alleviates Plaintiff's symptoms. Therefore, reasonable persons in Defendants' positions could have believed that their actions did not violate Plaintiff's clearly established constitutional rights.

Accordingly, Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment deliberate indifference claim, and their motion for summary judgment on this claim is GRANTED on this ground also.

## **CONCLUSION**

In light of the foregoing, Defendants' motion for summary judgment is GRANTED. (Docket No. 40). The Clerk of the Court shall enter judgment in favor of Defendants. All parties shall bear their own costs. The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

Dated: September 5, 2013

_____
JON S. TIGAR
United States District Judge